UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-10004 |
| ARRIBA W. LEWIS, | ) ) ) |
| Defendant. | ) ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant's Motion [16] to Quash and Suppress. For the reasons set forth below, Defendant's Motion [16] is DENIED.

### BACKGROUND[1]

On January 12, 2017, Defendant Arriba Lewis was travelling south on Interstate 55 through McLean County in a silver Dodge Charger. Around 1:00 pm, he passed Illinois State Police Master Sergeant Timothy Sweeney observing traffic in his semi-marked police vehicle while parked in the median. Sgt. Sweeney observed Defendant following another vehicle closely and grabbing the steering wheel with two hands, sitting in a "stiff and ridged" manner, and 'leaning back' in the driver seat. Sweeney began to follow Lewis to see if he could observe a traffic violation and confirm his following distance, but then saw another State Police Trooper who had pulled a vehicle over. Sweeney pulled in behind the fellow officer to see if he needed assistance. Upon learning that his assistance was not needed, Sweeney resumed his pursuit of the Charger and quickly caught up to the vehicle. Video from the dash camera in Sweeney's police

---

[1] The following facts are taken from Defendant's Motion to Quash and Suppress (Doc. 16), the United States' Response (Doc. 18) and the July 12, 2017 motion hearing.

vehicle showed cars moving from the left lane to the right to allow Sweeney's speeding vehicle to pass them.

The video shows Lewis move from the right lane to the left lane in order to overtake a semi-trailer. Once Sweeney had regained sight of Defendant's Charger, Lewis decelerated and returned to the right lane behind the semi-trailer. At this point, the front of Lewis's car appears close to the back of the semi-trailer. Sweeney, who was about 1/4 or 1/8 of a mile behind Lewis, measured the distance between the semi-trailer and Defendant's Charger by starting a stop-watch built into the radar unit and using a mile-marker to determine the time between when the semi-trailer passed the marker and the Charger passed the marker. Sweeney then initiated a traffic stop after determining this time to be 1.2 seconds.

Once Lewis pulled to the side of the road, Sweeney approached the vehicle and informed him that he was following the semi-trailer too close. Sweeney noticed that Lewis appeared nervous and that his hands were shaking. Sweeney told Lewis that he was going to give him a written warning, and asked Lewis to accompany him to his squad car while he electronically created the warning. In the squad car, Sweeney asked Lewis where he was going, to which he first replied that he was travelling from Chicago to St. Louis to pick his 26 year-old son up from school but later said he was either picking him up from work or picking him up from an argument with his girlfriend. Sweeney testified that Lewis continued to exhibit labored breathing. Sweeney ran Lewis's license and confirmed that he had no warrants and a valid license, but a criminal history query revealed that Lewis was on federal supervised release for a cocaine offense.

Sweeney also requested that a fellow trooper with a canine unit respond to his location for an exterior sniff test of Defendant's vehicle. When asked whether he had anything illegal in

the vehicle, Lewis said no. However, when asked whether he was responsible for everything in the vehicle, Lewis also replied no. About ten minutes and forty seconds after Sweeney initiated the stop, he finished the electronic warning and gave a printed a copy to Lewis. He then informed Lewis that he was having a canine conduct a search around the exterior of Lewis's vehicle and asked about the terms of his federal probation or supervised release. Specifically, Sweeney asked Lewis if he was required to stay within the State of Illinois, which Lewis confirmed. From the time Sweeney gave Lewis his warning and license back to the time the canine arrived was less than a minute. The canine positively alerted to the vehicle, indicating the presence of a narcotic odor. Lewis and his vehicle were then searched and 208 grams of heroin was recovered from the space between the driver seat and center console of the vehicle.

## LEGAL STANDARD

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). When "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); 725 ILCS 5/107-2. In Illinois, an offense "means conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this State or by any law, local law or ordinance of a political subdivision of this State, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same." 730 ILCS 5/5-1-15.

"Probable cause exists when an officer reasonably believes that a driver committed a traffic offense." *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006). Police may conduct a brief investigatory traffic stop, a *Terry* stop, if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed. *Id.*, citing *United States v.*

*Baskin*, 401 F.3d 788, 791 (7th Cir. 2005). The propriety of a stop does not depend on whether the defendant actually committed an offense. Rather, the proper inquiry is whether it was reasonable for the officer to believe an offense had been committed. *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000).

**ANALYSIS**

Defendant's Motion to Quash and Suppress argues that Sgt. Sweeney lacked probable cause to detain Defendant because Defendant was not following too closely to the vehicle in front of him; Sgt. Sweeney unnecessarily extended the duration of the traffic stop until the canine unit arrived; and the canine search was conducted after Defendant had already been returned his license, given the warning, and was free to leave. Doc. 16. A motion hearing was held on July 12, 2017, where Sgt. Sweeney testified and video from the dash camera was reviewed. This Order follows.

*(1) Probable Cause to Conduct a Traffic Stop*

"Probable cause exists when an officer reasonably believes that a driver committed a traffic offense." *McDonald*, 453 F.3d at 960. The propriety of a stop does not depend on whether the defendant actually committed an offense, but whether it was reasonable for the officer to believe an offense had been committed. *Cashman*, 216 F.3d at 587. Here, Sweeney initiated a traffic stop based on his belief that Lewis was following another vehicle too closely. Illinois law provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." 625 ILCS 5/11-710. The Illinois Secretary of State guidelines interpreting this statute provide that drivers should maintain at least three seconds between vehicles. See ILLINOIS RULES OF THE ROAD, at 80 (2017).

4

Sweeney used a timer to estimate Defendant's following distance and determined that he was following about 1.2 seconds behind the semi-trailer. Thus, Sgt. Sweeney's "estimation of the following distance amounted to probable cause to believe that [Lewis's] vehicle was 'more close[ ] than is reasonable and prudent.'" *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) ("[I]t is clear that Sgt. McDonald's estimation of the following distance amounted to probable cause to believe that Mr. Muriel's vehicle was 'more close[ ] than is reasonable and prudent.'"); see also *United States v. Park*, 15-CR-30114-MJR-1, 2016 WL 74665, at *4 (S.D. Ill. Jan. 7, 2016) ("The question, however, is not whether Defendant *was* following the vehicles too closely, but whether Marlow had probable cause to believe that Defendant was following too closely.") (emphasis original). Having determined that probable cause existed to initiate the traffic stop, the Court turns to the issue of whether reasonable suspicion existed to support Defendant's continued detention after Sgt. Sweeney completed issuing the warning.

*(2) Reasonable Suspicion to Continue Detention*

"Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop … and attend to related safety concerns[.]" *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (internal citations omitted). While officers "may conduct certain unrelated checks during an otherwise lawful traffic stop," they "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. at 615. However, "information lawfully obtained during that period may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation." *United States v. Walton*, 827 F.3d 682, 687 (7th Cir. 2016), *cert.*

5

*denied,* 137 S. Ct. 407 (2016) (quoting *United States v. Figueroa–Espana*, 511 F.3d 696, 702 (7th Cir. 2007)).

Here, it was permissible for Sgt. Sweeney to ask Lewis questions unrelated to the justification for the traffic stop. See *Walton*, 827 F.3d at 687. Sweeney questioned Lewis while he was preparing the electronic warning, and the time between initiating the stop and handing Lewis the warning was just under eleven minutes. Thus, the duration of the stop was not "prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket." *Rodriguez*, 135 S. Ct. at 1614-15 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The issue is whether Sgt. Sweeney obtained enough information during the course of the stop to establish reasonable suspicion of criminal activity justifying further detention of Lewis after the written warning was completed. *Walton*, 827 F.3d at 687.

Sweeney testified that his determination of reasonable suspicion was based on: Lewis's grabbing the steering wheel with two hands, sitting in a "stiff and ridged" manner, and "leaning back" in the driver seat; Lewis's apparent nervousness and shaky hands; his continued nervousness after being advised that he was only receiving a written warning; his inconsistent statements about why he was travelling to St. Louis; his labored breathing; his status on supervised release for a federal cocaine offense and his admission that he was not allowed to leave the state; and his statement that he was not responsible for everything in his vehicle.

Reasonable suspicion is "based on the totality of the circumstances; defendants cannot show that a detainment was unreasonable by simply engaging in a 'divide-and-conquer' analysis." *Walton*, 827 F.3d at 688. In other words, "behavior which is susceptible to an innocent explanation when isolated from its context may still give rise to reasonable suspicion when considered in light of all of the factors at play." *United States v. Baskin*, 401 F.3d 788, 793 (7th

6

Cir. 2005). Among the factors that may be considered in a totality of the circumstances analysis include the driver's nervousness, *United States v. Tinnie*, 629 F.3d 749, 752 (7th Cir. 2011), implausible travel plans, *United States v. Childs*, 256 F.3d 559, 566 (7th Cir. 2001), criminal history (especially for drug offenses), *United States v. Sanford*, 806 F.3d 954, 956 (7th Cir. 2015), and point of departure from a well-known drug interdiction area, *United States v. Johnson*, 910 F.2d 1506, 1509-10 (7th Cir. 1990). See *United States v. Park*, 15-CR-30114-MJR-1, 2016 WL 74665, at *5 (S.D. Ill. Jan. 7, 2016) (collecting cases).

      Considering the totality of the circumstances, Sgt. Sweeney obtained enough information during the course of the stop to establish reasonable suspicion of criminal activity justifying further detention of Lewis after the written warning was completed. *Walton*, 827 F.3d at 687. Lewis's nervousness even after learning he was only given a warning, his inconsistent explanation for going to St. Louis, and his status on supervised release for a drug offense are significant factors justifying Sweeney's reasonable suspicion that Lewis may be transporting narcotics. And as the Seventh Circuit recently noted, Interstate 55 "is part of the network of north-south and west-east highways used by drug dealers to deliver their illegal drugs to the Windy City," and "[d]rug dealers also use Interstate 55 to transport drugs from Chicago to other cities, such as Peoria." *United States v. Sanford*, 806 F.3d 954, 955 (7th Cir. 2015). Thus, by the time Sweeney returned Lewis his license and gave him the written warning, he had sufficient reasonable suspicion to justify extending the stop. See *Muriel*, 418 F.3d 720, 726 (7th Cir. 2005).

      Finally, Sgt. Sweeney's continued detention of Lewis after completing the warning was reasonable. Less than one minute elapsed from the time that Lewis was given the warning to the time the canine unit arrived. See *Walton*, 827 F.3d at 689 (nothing unreasonable about extending stop by 22 minutes); *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (delay of 22

minutes not unreasonable). In sum, Sweeney had probable cause to believe that Lewis committed a traffic offense, the ten-minute stop to issue him a written warning was not unreasonable, and by the time the initial purpose of the stop was completed, Sweeney had a reasonable suspicion to justify extending the stop by one minute for a canine unit to arrive. Accordingly, Defendant's Motion to Quash and Suppress is denied.

## CONCLUSION

For the reasons stated above, Defendant's Motion [16] to Quash and Suppress is DENIED.

Signed on this 14th day of July, 2017.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge
