IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br><br> v. <br><br> ARRIBA W. LEWIS, <br>     Defendant. | Case No. 1:17-CR-10004-JEH-1 |

**Order**

Now before the Court is Defendant, Arriba Lewis's, *pro se* motion to reduce his sentence (D. 68), along with his counsel's supplementation to that motion (D. 69).[1] For the reasons stated, *infra*, the motion is denied.

**I**

Lewis was indicted on January 24, 2017, for unlawful possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On June 16, 2017, the Government filed an information pursuant to 21 U.S.C. § 851, indicating its intent to rely on Lewis's prior felony drug offenses to enhance his sentence. Lewis filed a Motion to Quash and Suppress, which was denied by the Court after a hearing. Subsequently, Lewis entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress. On December 14, 2017, Lewis was sentenced to 240 months in prison, a term below the guideline range, followed by eight years of supervised release. The Seventh Circuit affirmed the denial of the motion to suppress on appeal.

On March 18, 2020, Lewis filed a motion under 28 U.S.C. § 2255, claiming ineffective assistance of counsel, which was denied on November 9, 2021. Lewis also filed motions for compassionate release in June 2020, which were denied as the Court found no extraordinary or compelling reasons for relief and determined that the 18 U.S.C.

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

§ 3553 factors weighed against his release. On March 21, 2025, Lewis filed the *pro se* motion now pending before the Court to reduce his sentence under Amendment 821, which was followed by a counseled supplemental argument for a reduced sentence. The government responded to these motions, arguing against a reduction in sentence.

Regarding previous efforts to obtain compassionate release, Lewis, who suffers from asthma, argued that his medical condition placed him at high risk of severe illness or death from COVID-19, especially given the conditions at FCI Milan where he was housed. He reported that FCI Milan had over 100 confirmed COVID-19 cases among inmates and staff, with three inmate deaths, and described living conditions that made social distancing impossible, such as dormitory-style housing with 65 men per side, shared bathrooms, and close-proximity sleeping arrangements. Lewis also claimed that he had filed a request for compassionate release with the Warden of FCI Milan on or about May 9, 2020, and argued that the exhaustion requirement should be waived due to the pandemic.

The Court denied Lewis' motions for several reasons. First, the Court found that Lewis failed to exhaust his administrative remedies. Although Lewis claimed to have filed a request with the Warden on May 9, 2020, there was no evidence to support this. Instead, records showed a request filed on June 10, 2020, and his motion for compassionate release was filed only five days later, not meeting the 30-day requirement.

Next, the Court determined that Lewis did not demonstrate extraordinary and compelling reasons for release. His asthma was characterized as mild and intermittent, managed with medication, and not placing him at significant risk according to CDC guidelines, which indicate that only moderate to severe asthma increases COVID-19 risk. Additionally, the Court noted that COVID-19 was under control at FCI Milan, with only three current cases, and that the risk of contracting the virus might be higher in Chicago, where Lewis planned to reside if released.

Finally, the Court found that the factors under 18 U.S.C. § 3553(a) weighed heavily against release. Lewis was serving a sentence for a serious drug offense committed while on supervised release for another offense, and he had served only a small portion of his

sentence. The Court emphasized that releasing Lewis would not reflect the seriousness of his offense, promote respect for the law, or provide just punishment. Furthermore, Lewis had a history of violent acts, including murder, which suggested he could pose a threat to the public if released.

Now, Lewis again seeks compassionate release, arguing that his criminal history has been overstated, which adversely affected his sentencing. He contends that if sentenced today, his criminal history points would be fewer due to changes in the advisory sentencing guidelines, although he acknowledges that he would still be classified as a career offender. Lewis highlights his rehabilitation efforts, including maintaining clear conduct for a substantial period, participating in available rehabilitative services, and obtaining certifications such as a Class C license and forklift operation. Additionally, Lewis emphasizes his personal circumstances, noting the death of his mother and most of his immediate family during his incarceration, and his desire to spend time with his remaining family members. He asserts that these factors, combined with his age and the hardships endured during the COVID-19 pandemic, justify a reevaluation of the sentencing factors under 18 U.S.C. § 3553(a).

The Government opposes his motion. First, the Government argues that Lewis has not exhausted his administrative remedies, a mandatory prerequisite for filing a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His request to the Bureau of Prisons (BOP) was based on different grounds than those presented in his current motion, which constitutes a failure to exhaust according to the Government.

Second, even if the exhaustion requirement were met, the Government argues that Lewis has not demonstrated extraordinary and compelling reasons for a sentence reduction. His claims of family deaths and rehabilitation do not meet the criteria for extraordinary and compelling reasons as defined by the U.S. Sentencing Guidelines. His rehabilitation efforts, while commendable, are insufficient on their own to warrant a reduction in sentence, especially given his disciplinary record, which includes an admission of assaulting another inmate in July 2022.

Finally, the factors set forth in 18 U.S.C. § 3553(a) weigh heavily against Lewis's release according to the Government. The nature and circumstances of the offense, along with Lewis's criminal history, underscore the seriousness of his conduct and the need for the sentence to reflect this seriousness, provide adequate deterrence, and protect the public. He was convicted of unlawful possession with intent to distribute heroin while on supervised release for a prior offense, and his criminal history includes convictions for first-degree murder and distribution of crack cocaine.

## II

### A

Generally, "a court may not modify a term of imprisonment once it has been imposed" unless "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c), (c)(1)(B). The First Step Act of 2018 is such a statute. Pub L. 115-391, 132 Stat. 5194. Before the First Step Act, only the Director of the Bureau of Prisons could move for a sentence reduction, forcing federal prisoners to "persuade and depend on" them "to bring the motion on their behalf." *United States v. Thacker*, 4 F.4th 569, 575 (7t Cir. 2021). After the 2018 amendment of § 3582(c)(1)(A), federal prisoners now have the right to request a reduction in their sentences, "provided that the prisoner first allowed the Bureau to review the request and make a recommendation (or it let 30 days pass in silence)." *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

As relevant here, a court "may reduce the term of imprisonment" if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress did not define "extraordinary and compelling reasons" in the statute. Instead, it delegated that task to the Commission. 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction . . ."). The only

statutory limit Congress imposed on this power is that "[r]ehabilitation of the defendant alone" may not be an extraordinary and compelling reason. *Id.* § 994(t).

Effective November 1, 2023, the Commission promulgated a new policy statement applicable to compassionate release motions filed directly by prisoners. U.S. Sent'g Comm'n, Guidelines Manual § 1B1.13(a) (Nov. 2023). The Commission's 2023 amendment extended the applicability of the policy statement's categorization of "extraordinary and compelling" reasons that warrant a reduction to prisoner-filed motions, including: (1) medical circumstances of the defendant; (2) age of the defendant where the defendant is at least sixty-five years old; (3) circumstances necessitating a defendant to be a caregiver for an immediate family member; and (4) victim of abuse where the defendant has been assaulted in prison by a BOP employee. *Id.* § 1B1.13(b)(1)–(4). The policy statement states, in relevant part:

> **(b) Extraordinary and Compelling Reasons.**--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> **(1) Medical Circumstances of the Defendant**.—
>
>> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (B) The defendant is—
>>
>>> (i) suffering from a serious physical or medical condition,
>>>
>>> (ii) suffering from a serious functional or cognitive impairment, or
>>>
>>> (iii) experiencing deteriorating physical or mental health because of the aging process,

5

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—>

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

> (iii) such risk cannot be adequately mitigated in a timely manner.

**(2) Age of the Defendant**.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(3) Family Circumstances of the Defendant.—**

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

**(4) Victim of Abuse.**—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

> (A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or
>
> (B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

**(5) Other Reasons.**--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

    **(6) Unusually Long Sentence.**--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

  **(c) Limitation on Changes in Law.**--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

  **(d) Rehabilitation of the Defendant.**--Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

  **(e) Foreseeability of Extraordinary and Compelling Reasons.**--For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

*Id.* § 1B1.13(b)(5)–(e).

    The Seventh Circuit has described a two-step process for evaluating a prisoner-filed motion for compassionate release. First, "the prisoner must identify an

'extraordinary and compelling' reason warranting a sentence reduction." *Thacker*, 4 F.4th at 576. Second, "[u]pon a finding that the prisoner has supplied such a reason," a court "consider[s] any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.* "[T]he movant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021) (quotation marks omitted). When determining whether a prisoner has raised an extraordinary and compelling reason, a court should consider all the reasons raised "[i]ndividually and collectively." *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). Even if a reason on its own is "insufficient to meet the threshold," the collective effect of all the reasons raised may be extraordinary and compelling. *Id.*

### B

Setting aside the question of exhaustion and assuming Lewis could satisfy that burden, Lewis on the merits attempts to establish eligibility for compassionate release under the "other reasons," or "catchall," provision of § 1B1.13, which is his only avenue of potential relief at this time, since it is clear he does not fall within any of the other enumerated categories for eligibility. U.S.S.G. § 1B1.13(b)(5). However, the facts he presents to the Court do not establish compelling and extraordinary circumstances as defined by the policy statement at issue here.

Regarding his complaints related to his prior convictions and criminal history, as the Government points out, evening assuming his arguments had merit, it would not change his original guideline range, given his career offender status. Thus, whatever complaints Lewis has about his original sentence, the bottom line in his case is unchanged as far as the guideline range goes.

Secondly, although Lewis's steps toward rehabilitation are laudable and his family circumstances are sympathetic, they simply are insufficient to be extraordinary and compelling as defined by § 1B1.13(b)(5). If those facts were sufficient to meet the threshold for compassionate release, nearly every inmate would be able to meet that

9

threshold, which would make such circumstances "ordinary," rather than "extraordinary," as required by the Guidelines.

As for the weighing of the § 3553(a) factors, the Court only gets to this step if a defendant can first establish extraordinary and compelling reasons for release, *Thacker*, 4 F.4th at 576; reweighting the § 3553(a) factors can never itself be an extraordinary and compelling reason for release. Moreover, this Court has already held that the weighing of the § 3553(a) factors disfavor release. Nothing has changed to alter the Court's previous conclusion on this question, As this Court stated in *United States v. DeSilva*, 2025 WL 10477014, *2 (C.D. Ill; April 8, 2025), "'[T]here is a presumption against revisiting previously decided issues; '[u]nder the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation.' " *quoting, SFG v. Musk*, No. 19-cv-02198, 2021 WL 972887, at *1 (N.D. Ill. Feb. 10, 2021), *quoting United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (citations omitted). Lewis submits no arguments to this Court which it has not already considered with regard to the weighing of the § 3553(a) factors sufficient to alter the Court's previous conclusions on the question.

For good or for ill, 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 contain no limitations on the number of compassionate release motions a defendant may file. Nor do these provisions erect any procedural hurdles to filing successive motions like 28 U.S.C. § 2255(h) erects for collateral attacks. Consequently, a defendant can file an unlimited number of compassionate release motions so long as he meets exhaustion requirements. Accordingly, the law of the case doctrine supplies the only limiting principle on these successive motions and should be strictly applied to avoid the squandering of judicial resources by requiring consideration of repeated motions raising the same issues on the same facts over and over again.

### III

For the reasons stated, *supra*, Lewis's, *pro se* motion to reduce his sentence (D. 68), along with his counsel's supplementation to that motion (D. 69) are denied. Any future motion for compassionate release filed by Lewis must state with specificity what new

facts are presented which would constitute a basis for eligibility for compassionate release pursuant to § 1B1.13 and how those facts alter the Court's previous conclusion that the § 3553(a) factors preclude compassionate release. Failure to do so will result in the denial of the motion with citation to this Order.

*It is so ordered.*

Entered on May 15, 2025

<u>s/Jonathan E. Hawley</u>
U.S. DISTRICT JUDGE